FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 1 9 2001

CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMMY L. WILLIAMS,

    Plaintiff,

vs.                                       Civ. No. 00-1564 LH/DJS

LARRY G. MASSANARI,[1]
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Reversal or Remand of Administrative Decision (Docket No. 9), filed June 5, 2001. The Commissioner of Social Security issued a final decision denying the Plaintiff his claim for supplemental security income and disability insurance benefits. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the court finds that the motion is not well taken and recommends that it be DENIED.

### PROPOSED FINDINGS

#### I. PROCEDURAL RECORD

1.     Plaintiff Tommy L. Williams filed an application for disability insurance and

---

[1] Larry G. Massanari became Acting Commissioner of Social Security on March 29. 2001. Pursuant to Rule 25(d)(1) as the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted, therefore, for Acting Commissioner William A. Halter as the defendant in this suit.

1



supplemental security income on June 4, 1998 alleging a disability since October 31, 1998 due to heart problems, vascular damage, polycystic kidney disease and back pain. Tr. 54, 78 and 90. The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on November 16, 1999. Tr. 327. On December 29, 1999, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. Sec. 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant has not engaged in post-onset substantial gainful activity; the claimant had a "severe" impairment or combination of impairments due to a lumbar strain secondary to degenerative disc disease, chronic back pain, polycystic kidney disease, peripheral vascular disease, coronary artery disease and depression; the severity of the claimant's impairments do not meet or equal a listed impairment; the claimant has a symptom-producing medical problem but exaggerates the symptoms and functional limitations produced thereby; the claimant retains a residual functional capacity for a limited range of light work; and the claimant has the capacity to perform alternative jobs that exist in significant numbers in the economy. Tr. 14-19.

    2.  The ALJ entered his decision on December 29, 1999. Thereafter, the Plaintiff filed a request for review in September 28, 1998. Tr. 10. On September 13, 2000, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. Tr. 8. The Plaintiff subsequently filed his complaint for court review of the ALJ's decision on November 6, 2000.

## II. STANDARD OF REVIEW

    3.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.

See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

4. In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. Se 42 U.S.C. Sec.423(d)(1)(A); see also Thompson, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. Sec. 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. See Thompson, 987 F.2d at 1487.

5. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities and his impairment meet or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404,, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. Secs. 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering

his residual functional capacity, age, education, and prior work experience. Id.

### III. DISCUSSION

6. Plaintiff raises three arguments in support of his Motion to Reverse or Remand Administrative Decision. First, the Plaintiff argues the ALJ erred in evaluating the severity of the his impairments. Second, the ALJ erred in not giving proper weight to Plaintiff's treating physicians' opinions. Third, the ALJ erred in ignoring the vocational expert's testimony.

The ALJ's step two analysis.

7. At step two, the ALJ determines whether the Plaintiff has an impairment or combination of impairments that are severe. 20 C.F.R. §404.1520(c). Plaintiff needs only to make a "de minimis" showing that his impairment or combinations of impairments significantly limits his physical or mental ability to do "basic work activities." 20 C.F.R. §1521. The Plaintiff made the proper showing. The ALJ found that all of Plaintiff's alleged impairments were severe. Specifically he found that the following impairments were severe: lumbar strain secondary to degenerative disc disease, chronic back pain, polycysitc kidney disease, peripheral vascular disease, coronary artery disease and depression. Tr. 14. The ALJ did not err.

8. Plaintiff also cursorily argues that the record does not support the ALJ's residual functional capacity finding. However, the evidence he relies on predates the relevant period in this case. The relevant period in this matter is from October 31, 1998 to December 29, 2000. Further, the record supports the ALJ's finding that the Plaintiff has the residual functional capacity to work.

9. The record shows that Plaintiff had a left iliac wall stent placement and coronary arteriogram in April of 1998. Tr. 135. He had "excellent angiographic outcome" to the stent

4

placement. Id. There was no showing of peripheral ischemia at this time. Dr. Harvey White, his treating physician, found there was no need for angioplasty. At this time the Plaintiff also had a left kidney cyst aspiration.

10. The Plaintiff took a stress echocardiogram in June of 1998. The results, according to his physician, were good. He had an ejection fraction of about 60%. Tr. 196. He exercised for over eleven minutes and obtained a maximum workload equivalent of 7 METS. Tr. 207. In April of 1998 an echocardiogram showed that his left ventricle function was not "severely reduced." Tr. 212.

11. On August 26, 1998, Plaintiff's treating cardiologist, Dr. Khalid Manzar wrote that Plaintiff was capable of resuming a normal workload. Tr. 215. Dr. Manzar further found that Plaintiff did not have any limitations in working. In September of 1998, Plaintiff's symptoms were "nicely controlled on medications" and he rarely took nitroglycerin. Tr. 280.

12. In January of 1999, Plaintiff was given diagnostic tests because of his complaints of progressive symptoms. Tr. 266. The cardiac catherization revealed near normal left ventricular function. His small vessel stenosis was unchanged from previous studies. Dr. White recommended that Plaintiff's medications be decreased "in light of the lack of severity of his multi-vessel disease." Id. The peripheral angiography showed a 90% stenosis in the right iliac. Plaintiff had a bilateral iliac stent placement. At discharge, Dr. White stated that Plaintiff could resume his "usual activity." Tr. 267.

13. Diagnostic and follow-up tests showed that Plaintiff had good results from the bilateral stent placement. The stents were patent. Tr. 279 and 311. On February 9, 1999 Plaintiff's ankle/brachial index was normal on the right and left side. Tr. 279. On May 5, 1999,

a cerebrovascular evaluation showed only mild to minimal athersclerotic plaque. Tr. 310.

14. The medical evidence clearly supports the ALJ's finding that Plaintiff's lumbar strain and degenerative disc disease was not disabling. The Plaintiff was seen by Dr. Robert Pennington, a physician specializing in physical medicine and rehabilitation. Plaintiff's x-ray showed that he has a degenerative disc at L4-5 and narrowed disc space at L-5, S-1. Tr. 298. On physical examination, Plaintiff had negative straight leg raising, good lower extremity range of motion, intact sensations and 5/5 motor strength. Tr. 321. Dr. Pennington diagnosed Plaintiff with lumbar strain. He recommended conservative treatment.

15. Finally, the evidence supports the ALJ's finding that Plaintiff's depression was not disabling. On December 16, 1998, Robert Karp, M.D., a consultative psychiatrist examined the Plaintiff. Dr. Karp noted that the Plaintiff had been taking Paxil, an antidepressant, for only three weeks and had experienced improvement. Tr. 189. He diagnosed Paltinfiff with moderate depression but that it appeared to be "more of a personality type of problem, than a classical major depression." Tr. 189. Dr. Karp assessed that on the Global Assessment of Functioning Scale that Plaintiff had a 60. This indicates moderate symptoms. Id.

Treating physician opinion.

16. Plaintiff argues that the ALJ improperly discounted the opinion of Daniel Raes, M.D., Plaintiff's family physician. Tr. 282. The ALJ may reject a treating physician's opinion if it is brief, conclusory and unsupported by the medical evidence. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). In this matter, the ALJ specifically considered the opinion of Dr. Raes and properly gave it little weight. The ALJ noted that Dr. Raes "concluded that the claimant's cardiovascular disease and renal problems are the most severe, the above evidence shows that his

6

cardiovascular symptoms are well controlled with medications. Moreover, Dr. Raes does not mention any specific objective findings or disabling functional limitations resulting form kidney disease." Tr. 17. As discussed above, Plaintiff's medications had been deceased in January of 1999 because of the "lack of severity of his multi-vessel disease." Tr. 266. Doppler studies in February and March of 1999, showed that Plaintiff's bilateral iliac stents were patent. Tr. 279 and 311. The medical evidence simply does not support Dr. Raes' opinion that Plaintiff was unable to work.

Testimony of vocational expert.

17. The ALJ posed a hypothetical question to the vocational expert with the functional limitations supported by the record. Tr. 357. The limitations, with support in the record, were simple, non- complex work with alternate sitting and standing every 15 to 25 minutes and the ability to lift about 10 to 15 pounds. The vocational expert testified that there was work for such an individual such as a hotel clerk, production line assembly worker, general office clerk and procurement clerk. Tr. 358. These occupations comprise approximately 3,350,000 jobs nationally and 17, 500 jobs in New Mexico. Tr. 359. Plaintiff's counsel asked the vocational expert to assume functional limitations not supported by the record. Only when the vocational expert was asked to assume that an individual was required to lay down six times a day for thirty minutes to an hour did the expert testify that there were no jobs available. Tr 360. A vocational expert's response premised on assumptions unsupported by the record is not binding on the ALJ. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ did not err.

## RECOMMENDED DISPOSITION

I recommend finding that the ALJ applied the correct legal standards and his decision is

supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed November 6, 2000, should be DENIED.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to Sec.636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
Don J. Svet
UNITED STATES MAGISTRATE JUDGE